Vanessa R. Waldref
United States Attorney
Eastern District of Washington
George J.C. Jacobs III
Dominique Juliet Park
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 2 1 2022

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MOHAMMED NAJI AL-JIBORY,<br><br>Defendant. | 4:21-CR-6042-MKD-23<br><br>PLEA AGREEMENT |

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, George J.C. Jacobs, III, and Dominique Juliet Park, Assistant United States Attorneys for the Eastern District of Washington, and Defendant MOHAMMED NAJI AL-JIBORY (hereinafter "Defendant" and/or "AL-JIBORY") and Defendant's counsel, Bryan P. Whitaker, agree to the following Plea Agreement:

1.    Guilty Plea and Maximum Statutory Penalties:

Defendant, MOHAMMED NAJI AL-JIBORY, agrees to plead guilty to the following count of the Indictment returned by the Grand Jury on December 7, 2021, which carries the statutory maximum penalties set forth below:

     (a)    Count 128 charging Conspiracy to Obstruct Official Proceedings, in violation of 18 U.S.C. §§ 1512(k), 1512(a)(2)(C), 1512(b)(1),

Plea Agreement- 1 of 19

1512(b)(3), 1512(c)(2). Defendant understands that the maximum statutory penalties for this offense is not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000; and a $100 special penalty assessment;

Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment, *see* 18 U.S.C. § 3583(e), without credit for time previously served on post-release supervision.

2.      Effect on Immigration Status:

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including his attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

3.      The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject it. Sentencing is a matter solely within the discretion of the Court. Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximum penalties stated in the Plea Agreement.

Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter.

Plea Agreement- 2 of 19

Defendant understands that the Court is required to consider the applicable sentencing guideline range but may depart or vary upward or downward under the appropriate circumstances.

Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement, or a basis for withdrawing his pleas of guilty.

4.   Waiver of Constitutional Rights:

Defendant understands that by entering his pleas of guilty, Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a)   The right to a jury trial;

(b)   The right to see, hear, and question the witnesses;

(c)   The right to remain silent at trial;

(d)   The right to testify at trial; and

(e)   The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands (she) retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.  Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

5.   Elements of the Offense:

The parties agree that, in order to convict Defendant of Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), as charged in Count 128, the United States would have to prove beyond a reasonable doubt the following elements:

- *First*, beginning on about May 28, 2020, and continuing through on or about December 7, 2021, in the Eastern District of Washington and elsewhere, Defendant MOHAMMED NAJI AL-JIBORY together with Co-Defendants named in Count 138 and others, in some way and

Plea Agreement- 3 of 19

manner, agreed to try and accomplish a common and unlawful plan to commit a violation of 18 U.S.C. § 1512(b)(3) and 18 U.S.C. § 1512(c)(2) as charged in the Indictment; and

- *Second*, Defendant MOHAMMED NAJI AL-JIBORY became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The objects of the 18 U.S.C. § 1512(a)(2)(C) offense, are

- *First*, one of the Defendants named in Count 128 used physical force or the threat of physical force against other persons as described in the Indictment, or attempted to do so;

- *Second*, one of the Defendants named in Count 128 acted knowingly; and

- *Third*, one of the Defendants named in Count 128 acted with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings.

The objects of the 18 U.S.C. § 1512(b)(1) offense, are

- *First*, one of the Defendants named in Count 128 used intimidation, threatened, or corruptly persuaded another person, or attempted to do so;

- *Second*, one of the Defendants named in Count 128 acted knowingly; and

- *Third*, one of the Defendants named in Count 128 acted with intent to influence, delay, and prevent the testimony of persons in an official proceeding, that is, a Federal Grand Jury proceeding and a foreseeable criminal proceeding before a judge and court of the United States.

Plea Agreement- 4 of 19

The objects of the 18 U.S.C. § 1512(b)(3) offense, are

- *First*, AL-JIBORY engaged or attempted to engage in misleading conduct toward other persons, as described in the Indictment;
- *Second*, AL-JIBORY acted knowingly;
- *Third*, AL-JIBORY acted with intent to hinder, delay, and prevent the testimony of persons in an official proceeding, that is, a Federal grand jury proceeding and a criminal proceeding before a judge and court of the United States; and
- *Fourth*, such information related to the commission or possible commission of a federal offense, as listed in the Indictment.

The objects of the 18 U.S.C. § 1512(c)(2) offense, are

- *First*, AL-JIBORY obstructed, influenced, and impeded, and attempted to obstruct, influence, and impede an official proceeding that is, a Federal grand jury proceeding and a criminal proceeding before a judge and court of the United States; and
- *Second*, AL-JIBORY acted corruptly.

6.    Factual Basis and Statement of Facts:

The parties stipulate and agree that the United States could prove the following facts beyond a reasonable doubt at trial, and these facts constitute an adequate factual basis for Defendant's guilty pleas. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

*Conspiracy to Obstruct an Official Proceeding (Count 128)*

Beginning on or about May 28, 2020, and continuing through on or about the date of this Indictment, in the Eastern District of Washington, and elsewhere, Defendant AL-JIBORY and Co-Defendants YASER [-1], YASIR, YASER [-2], BACHAY [-1] and AL-HIMRANI [-1], did knowingly and intentionally conspire with each other and

Plea Agreement- 5 of 19

others known and unknown to the Grand Jury, to commit offenses in violation of 18 U.S.C. § 1512, specifically:

(a)    to use the threat of physical force against any person, and attempt to do so, with the intent to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of Federal offenses, including mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. § 1512(a)(2)(C);

(b)    to corruptly persuade another person, and attempt to do so, with intent to influence, delay, and prevent the testimony of persons in an official proceeding, that is, a Federal Grand Jury proceeding and a foreseeable criminal proceeding before a judge and court of the United States, in violation of 18 U.S.C. § 1512(b)(1);

(c)    to knowingly engage in misleading conduct toward other persons, that is Federal Bureau of Investigation ("FBI") Special Agents, who are law enforcement officers of the United States, with the intention of hindering, delaying, and preventing the testimony of persons in an official proceeding, and with the intention of hindering, delaying, and preventing communication to these officers and a judge of the United States, of information relating to the commission and possible commission of Federal offenses, including mail fraud, wire fraud, health care fraud, in violation of 18 U.S.C. § 1512(b)(3); and

(d)    to corruptly obstruct, influence, and impede, and attempt to obstruct, influence, and impede an official proceeding, that is, a Federal grand jury proceeding and a criminal proceeding before a judge and court of the United States, in violation of 18 U.S.C. § 1512(c)(2).

The Federal Bureau of Investigation ("FBI") is a law enforcement agency within the executive branch of the United States Government.  The FBI has authority

Plea Agreement- 6 of 19

to investigate and enforce the criminal laws set forth in Title 18 of the United States Code.

On or about February 15, 2019, the FBI opened an official investigation into allegations that several individuals were involved in a scheme to defraud insurance companies and obtain money and property by staging automobile accidents and filing false and fraudulent claims with insurance companies, in violation of the federal criminal laws. The FBI investigation expanded to an investigation by a Federal grand jury empaneled in the Eastern District of Washington. During this investigation, YASIR, SANCHEZ [-1], YASER [-1], YASER [-2], BACHAY [-1], BACHAY [-2], BACHAY [-3] BAJAY, AL-HIMRANI [-1], AL-KINANI, KARAWI, KAABAWI, AL-MAAREJ, ABDUL-SALAM, MOHAMMED, AL-HIMRANI [-2], AL-DULAIMI, ABDUL-RAZAQ, SANCHEZ [-2], HADI, YASEEN, AKRAWI, and other individuals not named herein, were identified as being involved in a scheme to defraud insurance companies out of money and property by staging automobile accidents and faking injuries.

The lead case agent involved in the staged accident investigation is employed by the FBI as a "Special Agent" (identified hereinafter as "Special Agent M"). An FBI Special Agent is a law enforcement officer of the United States. A Certified Language Specialist (identified hereinafter as "FBI Specialist H") employed by the FBI assisted in the ongoing investigation. FBI Specialist H is fluent in Arabic and English.

As part of the investigation, the FBI used a confidential human source (hereinafter, "John Doe") who covertly recorded conversations with individuals suspected of being involved in the staged accident scheme. Beginning on or about June 22, 2018, and continuing up to the date of this indictment, John Doe provided information to the FBI regarding violations and suspected violations of the Federal criminal laws, including but not limited to, mail fraud, wire fraud and health care fraud, arising from staged automobile accidents. John Doe covertly recorded the

Plea Agreement- 7 of 19

individuals involved in two staged accidents on September 6, 2019, and December 2, 2019.

On or about May 28, 2020, the FBI executed federal warrants in Washington and California to search the residences of YASER [-1], YASER [-2], YASIR, BACHAY [-1], BACHAY [-2], BAJAY, AL-MAAREJ, AL-HIMRANI [-1], AL-HIMRANI [-2], KAABAWI, SANCHEZ [-1], AL-KINANI, MOHAMMED, YASEEN for evidence of federal crimes, including mail and wire fraud, and health care fraud. FBI agents interviewed several of these individuals about the suspected staged accident scheme.

On or about May 31, 2020, Defendant YASER [-1] held a meeting at his residence. YASER [-1] warned John Doe and another individual not named herein to be careful of AL-KINANI because he suspected AL-KINANI was providing information to the FBI. YASER [-1] asked if anyone had seen the FBI meet with AL-KINANI. YASER [-1] asked John Doe when the FBI talked to him. YASER [-1] also inquired about MOHAMMED and why he left when the FBI went to his house.

On or about June 2, 2020, MOHAMMED met with John Doe and stated that someone was reporting to the FBI. On or about June 19, 2020, YASER [-1], YASIR, YASEEN, and an individual not named herein, met with John Doe. John Doe was questioned about the FBI search and was asked to show the documents the FBI left at John Doe's residence. At a date unknown but at least by on or about June 25, 2020, BACHAY [-1] contacted John Doe and asked John Doe why he did not want to show YASER [-1] the document the FBI left at John Doe's residence the day of the search warrants.

On or about July 7, 2020, FBI Special Agent M and FBI Language Specialist H interviewed YASER [-2] in Kennewick, Washington. On or about July 11, 2020, YASER [-1] met with John Doe. YASER [-1] discussed his intention to have a meeting to discuss plans about how everyone was going to testify against AL-KINANI. YASER [-1] told John Doe that AL-KINANI was the person who was reporting to the FBI.

Plea Agreement- 8 of 19

On or about July 14, 2020, YASER [-1], YASIR, AL-HIMRANI [-2], and John Doe met at YASER [-1]'s residence. YASIR stated if someone asked if "[John Doe] had an accident do you suspect it was made up or real. My standard answer is I do not know." YASER [-1] stated he would not stand still if others were trying to be witnesses against him. YASIR stated that two or three people were working with the FBI. On or about July 15, 2020, MOHAMMED and AL-HIMRANI [-2] met with John Doe. Both defendants asked John Doe why the FBI interviewed him and wanted to know what was discussed. On or about July 27, 2020, AL-HIMRANI [-1] and BAJAY met with John Doe in Pasco, Washington. AL-HIMRANI [-1] told John Doe -1 that he told his lawyer the most important thing was to find out who cooperated. AL-HIMRANI [-1] also told John Doe he told ABDUL-SALAM, "I swear to you on my father's soul, if I find out you [ABDUL-SALAM] had anything to do with this." BAJAY and AL-HIMRANI [-1] stated that ABDUL-SALAM is "in our plan."

On or about August 20, 2020, YASER [-1] stated to John Doe that he learned that AL-KINANI visited John Doe on August 19, 2020. YASER [-1] admonished John Doe for not calling YASER [-1] when AL-KINANI visited John Doe. YASER [-1] told John Doe in sum and substance that he would have come over to John Doe's residence, closed the garage door, shut off the security system cameras, and killed AL-KINANI. YASER [-1] expressed to John Doe "they would not have recognized his face from his foot." YASER [-1] encouraged John Doe to call AL-KINANI to convince him to meet with YASER [-1] at his residence.

On or about August 24, 2020, YASER [-1] met with John Doe and discussed plans to file a false, fictitious, and fraudulent complaint against the FBI case agent and AL-KINANI and to persuade others to support his plan to make false allegations against AL-KINANI and the FBI case agent. YASER [-1] stated, "And when we make him [AL-KINANI] wear the handcuffs, we will be sending him away from the field, keep him on the sideline, right." YASER [-1] also stated, "After I screw him [AL-KINANI], a week later I would go to them [the FBI] again and say to them, Protect me. Protect

my children. I need protection for myself and my children, and that Al-Mahdi Army militias are threatening my family in Iraq. I would put him in such a mess that he would never get out of."

YASER [-1] stated to John Doe that AL-KINANI "... is rubbish and son of rubbish. But he ... so that I mess up his balance forever, [OV] and get him out an disperse him. I would disperse him and at the same time his testimony will not be accepted, and the judge would be saying to him, "No, you are ... impersonating." John Doe stated, "Hajji [YASER [-1], if you want, I would go and testify ... tomorrow at the police station." YASER [-1] stated, "Just try to understand Brother. ... Just understand, I want three. Why do I want three? So as to let him have it and send him to his grave." YASIR [-1] further explained the plot, "The three of you came to visit me here and we were drinking coffee. Who are the three? Amir, ... and you, and MOHAMMAD Al-JIBURY. ... then he [AL-KINANI] called and said, that he has an important thing to discuss with me. You were with me ... so I said to you, 'Please would you go there.' I would arrange this to be a coffee table. 'There is someone who is coming to visit me and I would talk to him.' And you three, in the meantime, would be peeping through these openings." YASIER [-1] explained to John Doe, "For me, I know what I am going to say and talk. ... He [AL-KINANI] came to me, and said, 'I want $22,000. Two for me, and the twenty to this guy, of Seattle, of the FBI, the case manager.' And I do not have nay money so how come he is threatening me." YASER [-1] told John Doe, "Just listen to me. I want to explain the route to you. ... They would call him [AL-KINANI] up. They would scold him and interrogate him, then tell him to go home, goodbye. ... And at the same time the police would send a tip to FBI, 'This guy has betrayed you and exposed you.'"

On or about August 25, 2020, YASER [-1], YASIR, and YASER [-2] met at YASER [-1]'s residence. YASER [-1], YASIR, and YASER [-2] discussed fabricating a story to communicate to the local police and the FBI in furtherance of their scheme to discredit AL-KINANI and the FBI case agent and to make them unavailable as

Plea Agreement- 10 of 19

witnesses. YASER [-1], YASIR, and YASER [-2] also wanted to have the FBI agent removed from the case. YASER [-2] provided the FBI case agent's telephone number to YASER [-1]. YASER [-1] stated in sum and substance that "we will file a complaint with the police and the police will forward it to them [FBI]" and "[t]he police will turn it upside down on them, it won't take half an hour and it would reach them."

On or about August 25, 2020, YASER [-1] and YASIR rehearsed and coached YASER [-2] on what to say if he was questioned about the May 28, 2019, accident. YASIR [-1], YASER [-2], KARAWI, AL-KINANI and MOHAMMED were involved in a staged accident on May 28, 2019. YASIR also instructed YASER [-2] to say, "what Americans say here," that is, YASER [-2] should respond, "I don't know."

On or about August 25, 2020, YASER [-1] called the Kennewick Police Department ("KPD") and stated, "I need to talk something for the investigation or something, for some issue with me here, this scum guy is here in my backyard, told me something is wrong, I don't know, I ... come your guy's or you're come in my house, I don't know . . . Son, talk to him straight, because he can't understand. My son, will help me for the language, please."

On or about August 25, 2020, YASER [-2] stated to the KPD, "..., yeah, this is my Dad's son ... so what he was saying, that he wanted to report, or make a report, at least to an officer, about some guys that came here and talked to him, and we weren't sure what it was about." YASER [-2] provided his telephone number to the KPD and requested an Arabic interpreter be available when KPD contacted YASER [-1].

On or about August 31, 2020, during a telephonic interview with a KPD Officer and an Arabic interpreter, YASER [-1] falsely stated in sum and substance that: (1) in the past week he met with AL-KINANI at approximately 5:00 p.m. in his backyard in the presence of AL-JIBORY, John Doe, and another individual he would not identify; and (2) AL-KINANI requested YASER [-1] pay $20,000 for the "FBI guy, Matt" and $2,000 for AL-KINANI so YASER [-1]'s "case" would be closed. YASER [-1] falsely stated to the KPD officer that AL-KINANI threatened YASER [-1] that he would go to

Plea Agreement- 11 of 19

prison for two years if he did not pay the money. YASER [-1] asked the KPD officer to provide him with the case number for his complaint.

On or about September 4, 2020, YASER [-1] knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to an FBI Special Agent and FBI Certified Arabic Language Specialist during a recorded interview that: (1) on or about August 24, 2020, at approximately 5:10 p.m., in the presence of three other witnesses, YASER [-1] met with AL-KINANI in the backyard of his residence and AL-KINANI offered YASER [-1] a deal to close the case and investigation against YASER [-1] in exchange for a $22,000 bribe payment ($20,000 to the FBI agent(s) and $2,000 to AL-KINANI).

On or about September 14, 2020, YASER [-1] provided AL-JIBORY's and John Doe's telephone numbers to an FBI agent in Spokane, Washington. On or about September 14, 2020, in the Eastern District of Washington, YASER [-1] knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to an FBI Special Agent and an FBI Certified Arabic Language Specialist during a recorded interview that: AL-KINANI met with YASER [-1] in the backyard at his residence and, in the presence of friends (including AL-JIBORY), offered YASER [-1] a "deal" for the FBI to close the case and investigation against YASER [-1] and make it go away in exchange for a $22,000 bribe and illegal payment ($20,000 to the FBI agents and $2,000 to AL-KINANI).

On or about September 16, 2020, in the Eastern District of Washington, the Defendant, AL-JIBORY, made materially false, fictitious, and fraudulent statements and representations the FBI, in that he represented and stated in sum and substance to an FBI Special Agent and FBI Arabic Language Specialist during a recorded interview that: (1) on or about August 24, 2020, at approximately 5:10 p.m., John Doe came to YASER [-1]'s residence with AL-KINANI; (2) AL-KINANI tried to make a deal with YASER [-1] that involved paying money to the FBI; (3) the FBI wanted money to take care of the case; (4) AL-JIBORY was present at YASER [-1]'s

Plea Agreement- 12 of 19

residence and witnessed AL-KINANI orally soliciting approximately a $20,000 payment from YASER [-1]; (5) an additional person was present who witnessed the conversation but that person did not want to be identified; and (6) AL-KINANI stated if YASER [-1] paid money to the FBI, then YASER [-1]'s "case would be gone;" when in truth and in fact, as AL-JIBORY well knew, the statements and representations were materially false, fictitious, and fraudulent when made. In doing so, AL-JIBORY engaged in misleading conduct toward the FBI agents with the intention of hindering, delaying, and preventing communication to these officers and a judge of the United States, of information relating to the commission and possible commission of Federal offenses, including mail fraud, wire fraud, and health care fraud. He also attempted to corruptly obstruct, influence, and impede, and attempt to obstruct, influence, and impede an official proceeding, that is, a Federal grand jury proceeding and a criminal proceeding before a judge and court of the United States.

On or about October 10, 2020, BACHAY [-1] met with John Doe and other individuals in California. BACHAY [-1] admonished John Doe for having gatherings where the case was discussed. BACHAY [-1] told John Doe that he told him not to do that. BACHAY [-1] further told John Doe if he was in Tri-Cities, and people were talking like that, they would be hanging from poles.

On or about December 21, 2020, BACHAY [-1], did use the threat of physical force against a person, by telling John Doe, an individual who was assisting the FBI in an ongoing investigation, that BACHAY [-1] would identify and kill a particular person's family in Iraq if that person (who was in the United States) was working with the FBI.

On or about January 3, 2021, BACHAY [-1] telephoned John Doe and accused John Doe of carelessly discussing the staged accidents with other individuals in the Iraqi community. BACHAY [-1] verbally threatened John Doe stating that he would travel to Eastern Washington to kill John Doe and his family.

Plea Agreement- 13 of 19

On or about January 6, 2021, AL-HIMRANI [-1] told John Doe that AL-HIMRANI [-1] tasked the militia in Iraq to identify the Iraq address of a family member for a person in the United States AL-HIMRANI [-1] suspected of cooperating with the FBI.

7.    The United States Agrees:

(a)    To Dismiss Counts:

At the time of sentencing, the United States agrees to move to dismiss as to Defendant Count 138, which charges Defendant with False Statements in a Matter within the Jurisdiction of the Executive Branch, in violation of 18 U.S.C. § 1001(a)(2).

(b)    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement any time before sentencing.

8.    United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing.

(a)    Base Offense Level:

The parties agree and stipulate that Defendant's Base Offense Level is 14. *See* USSG § 2J1.2(a).

(b)    Specific Offense Characteristics:

The parties have no agreement whether any other specific offense characteristics are applicable. The United States and Defendant may argue for or

Plea Agreement- 14 of 19

against any adjustments and/or enhancements under the USSG noted in the Presentence Investigation Report.

(c)    Official Victim:

Defendant acknowledges the United States will recommend that his offense level be increased 3-levels on the basis that the victim was a government officer or employee, and the offense of conviction was motivated by such status. USSG §3A1.2(a). Defendant reserves the right to object.

(d)    Acceptance of Responsibility:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters pleas of guilty no later than March 25, 2022, the United States will move for a 3-level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to USSG §3E1.1(a), (b).

The parties agree that the United States may at its option and upon written notice to Defendant, not recommend a 3-level reduction for acceptance of responsibility if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever, or if Defendant tests positive for any controlled substance.

(f)    Criminal History:

The parties make no agreement on Defendant's criminal history category, which shall be determined by the Court after the Presentence Investigative Report is completed.

9.    Departure:

The Defendant is free to move for a departure and/or variance under 18 U.S.C. § 3553. The United States intends to seek a guidelines sentence.

10.    Incarceration:

Plea Agreement- 15 of 19

The United States agrees to recommend a sentence of imprisonment within the adjusted sentencing range under the USSG as determined by the Court at the time of sentencing. The Defendant is free to recommend any legal sentence he deems appropriate. Again, the Defendant understands that the Court will ultimately determine the applicable sentencing guideline range and is not bound to follow the recommendations of the parties and that the Court may also depart or vary downward or upward under the appropriate circumstances from the applicable advisory sentencing range.

11.    Criminal Fine:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

12.    Supervised Release:

The parties agree to recommend that the Court impose a 3-year term of supervised release. The parties are free to advocate for any special conditions they believe are appropriate.

13.    Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 per count of conviction mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington. *See* 18 U.S.C. § 3013.

14.    Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, then Defendant agrees to earn the money to pay toward these obligations by participating in Bureau of Prisons' Inmate Financial Responsibility Program.

15.    Additional Violations of Law Can Void Plea Agreement:

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted

Plea Agreement- 16 of 19

of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

16.    Appeal Rights:

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his conviction, sentence and fine. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

17. Waiver of Attorney's Fees and Costs:

Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

18.    Integration Clause:

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities. The parties agree that this agreement cannot be modified except in writing that is signed by the United States and Defendant.

Approval and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the

Plea Agreement- 17 of 19

Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____          3|21|22
George J.C. Jacobs III                    Date
Assistant United States Attorney

_____          3|21|22
Dominique Juliet Park                     Date
Assistant United States Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney. I understand and voluntarily enter into the Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____          3/14/22
MOHAMMED NAJI AL-JIBORY                   Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____          3/14/22
Bryan P Whitaker

Plea Agreement- 18 of 19

Bryan P. Whitaker                                    Date
Attorney for Defendant

Plea Agreement- 19 of 19

plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____     Date

Bryan P. Whitaker
Attorney for Defendant

_Amir_

Interpreted by:
Amine EL Fajri
Arabic court certified Interpreter

3/14/22
DATE

Plea Agreement- 19 of 19