1  Vanessa R. Waldref
   United States Attorney
2  Eastern District of Washington
3  George J.C. Jacobs III
   Assistant United States Attorney
4  Post Office Box 1494
5  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
6

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 05 2023

SEAN F. McAVOY, CLERK
_____DEPUTY
RICHLAND, WASHINGTON

7          UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF WASHINGTON
8

9  UNITED STATES OF AMERICA,            4:21-CR-6042-MKD-2

10                        Plaintiff,

11                                      PLEA AGREEMENT
                vs.                     Fed. R. Crim. P. 11(c)(1)(C)
12

13  HUSSEIN A. YASIR
    (a/k/a "Abu Fakhri"),
14

15                        Defendant.

16
        Plaintiff, United States of America, by and through Vanessa R. Waldref, United
17
   States Attorney for the Eastern District of Washington, George J.C. Jacobs, III,
18
   Assistant United States Attorney for the Eastern District of Washington, and
19
   Defendant HUSSEIN A. YASIR (a/k/a "Abu Fakhri") (hereinafter, "YASIR") and
20
   Defendant's counsel, Michael W. Lynch, agree to the following Plea Agreement:
21
        1.    Guilty Pleas and Maximum Statutory Penalties:
22
        Defendant, HUSSEIN A. YASIR, agrees to plead guilty pursuant to Fed. R.
23
   Crim. P. 11(c)(1)(C) to 12 felony counts of the Indictment returned by the Grand Jury
24
   on December 7, 2021 (Counts 3, 4, 6, 7, 9, 17, 20, 38, 51, 53, 126, and 127).
25
        Defendant HUSSEIN A. YASIR agrees to plead guilty to the following counts
26
   in the Indictment that each carry the statutory maximum penalties set forth below:
27

28

(a)    Counts 3, 4, 6, 7, and 9 charging Wire Fraud, in violation of 18 U.S.C. § 1343.  Defendant understands that the maximum statutory penalties for these offenses are not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment;

(b)    Counts 17, 20, 38, 51, and 53 charging Mail Fraud, in violation of 18 U.S.C. § 1341.  Defendant understands that the maximum statutory penalties for these offenses are not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment;

(c)    Count 126 charging Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349.  Defendant understands that the maximum statutory penalties for this offense is not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment;

(d)    Count 127 charging Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 1349.  Defendant understands that the maximum statutory penalties for this offense is not more than a 10-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or the greater of twice the pecuniary gain or twice the gross loss; the payment of restitution; and a $100 special penalty assessment;

Defendant understands that the Court has the authority to impose consecutive sentences for each conviction. Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment, *see* 18 U.S.C. § 3583(e), without credit for time previously served on post-release supervision.

2. Rule 11 Nature of the Plea Agreement

Defendant acknowledges that this Plea Agreement is entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)"). Pursuant to Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate disposition of the case is a range of 21 months to 68 months in custody, to be followed by a 3-year term of Supervised Release. Pursuant to Rule 11(c)(1)(C), the United States will be recommending that the Court impose a sentence of 68 months imprisonment and the Defendant will be recommending that the Court impose a sentence of 21 months imprisonment. Although the United States and Defendant agree to make these recommendations to the Court pursuant to Rule 11(c)(1)(C), Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will ultimately impose.

Defendant understands that Defendant may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of greater than 68 months or indicates its intent to do so. Defendant also understands that the United States may withdraw from this Plea Agreement if the Court imposes a term of imprisonment of less than 21 months or indicates its intent to do so.

The United States and Defendant acknowledge that the imposition of any fine, restitution, forfeiture, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard. The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, forfeiture, or

conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

3.  <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Sentencing is a matter solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximum penalties stated in the Plea Agreement. However, if the Court accepts this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(C), the Court is bound by the terms contained herein.

4.  <u>Waiver of Constitutional Rights:</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

        a.    the right to a jury trial;

        b.    the right to see, hear and question the witnesses;

        c.    the right to remain silent at trial;

        d.    the right to testify at trial; and

        e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

5. Elements of the Offense:

The parties agree that in order to convict Defendant of Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Counts 3, 4, 6, 7 and 9, the United States would have to prove beyond a reasonable doubt the following elements:

- *First*, on or about the dates set forth in each Count (Counts 3, 4, 6, 7, 9), in the Eastern District of Washington and elsewhere, Defendant HUSSEIN A. YASIR knowingly and willfully engaged in a scheme and artifice to defraud insurance companies to obtain money from the insurance companies by means of false and fraudulent pretenses, representations, and promises as described in each Count;

- *Second,* the statements made or facts omitted as part of the scheme were material; that is they had a natural tendency to influence, or were capable of influencing, the insurance companies as described in each Count to part with money or property;

- *Third*, Defendant HUSSEIN A. YASIR acted with the intent to defraud; that is the intent to deceive or cheat; and

- *Fourth*, Defendant HUSSEIN A. YASIR used, or caused to be used, an interstate wire communication as described in each Count to carry out or attempt to carry out an essential part of the scheme.

The parties agree that, in order to convict Defendant of Mail Fraud, in violation of 18 U.S.C. § 1341, as charged in Counts 17, 20, 38, 51 and 53, the United States would have to prove beyond a reasonable doubt the following elements:

- *First*, on or about the dates set forth in each Count (Counts 17, 20, 38, 51 and 53), in the Eastern District of Washington and elsewhere, Defendant HUSSEIN A. YASIR knowingly and willfully engaged in

a scheme and artifice to defraud insurance companies to obtain money from insurance companies by means of false and fraudulent pretenses, representations, and promises as described in each Count;

- *Second,* the statements made or facts omitted as part of the scheme were material; that is they had a natural tendency to influence, or were capable of influencing, insurance companies to part with money or property as described in each Count;

- *Third,* Defendant HUSSEIN A. YASIR acted with the intent to defraud; that is the intent to deceive or cheat; and

- *Fourth,* Defendant HUSSEIN A. YASIR used, or caused to be used, the mails as described in each Count to carry out an essential part of the scheme.

The parties agree that, in order to convict Defendant of Conspiracy to Commit Mail and Wire Fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349, as charged in Count 126, the United States would have to prove beyond a reasonable doubt the following elements:

- *First,* beginning no later than July 4, 2017, and continuing through on or about September 25, 2020, in the Eastern District of Washington and elsewhere, Defendant HUSSEIN A. YASIR together with Co-Defendants named in the Indictment and others, in some way and manner, agreed to try and accomplish a common and unlawful plan to commit mail and wire fraud as charged in the Indictment; and

- *Second,* Defendant HUSSEIN A. YASIR knew the unlawful purpose of the plan and willfully joined the plan.

The parties agree that, in order to convict Defendant of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 1349, as charged in Count 127, the United States would have to prove beyond a reasonable doubt the following elements:

- *First*, beginning no later than July 4, 2017, and continuing through on or about September 25, 2020, in the Eastern District of Washington and elsewhere, Defendant HUSSEIN A. YASIR together with Co-Defendants named in the Indictment and others, in some way and manner, agreed to try and accomplish a common and unlawful plan to commit healthcare fraud as charged in the Indictment; and
- *Second*, Defendant HUSSEIN A. YASIR knew the unlawful purpose of the plan and willfully joined the plan.

6.  Factual Basis and Statement of Facts:

The parties stipulate and agree that the United States could prove the following facts beyond a reasonable doubt at trial, and these facts constitute an adequate factual basis for Defendant's guilty pleas. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

*Conspiracy to Commit Mail/Wire Fraud and Health Care Fraud (Counts 126, 127)*

Beginning no later than July 4, 2017, and continuing through on or about September 25, 2020, in the Eastern District of Washington and elsewhere, Defendant YASIR together with Co-Defendants MARIA ELENA SANCHEZ (hereinafter, "SANCHEZ [-1]"), ALI ABED YASER (hereinafter, YASER [-1]"), HASANEIN A. YASIR, (hereinafter, "YASER [-2]"), ALI F. AL-HIMRANI (hereinafter, "AL-HIMRANI [-1]"), AHMAD K. BACHAY (a/k/a "Muthalath" a/k/a "Humayad") (hereinafter "BACHAY [-1]"), MOHAMMED BAJAY, (hereinafter, "BAJAY"), MASHAEL A. BACHAY (hereinafter "BACHAY [-2]"), HUSSAIN K. BACHAY (hereinafter, "BACHAY [-3]"), ABDULLAH AL-DULAIMI, (hereinafter, "AL-DULAIMI"), FIRAS S. HADI (hereinafter, "HADI"), FAROOQ S. YASEEN (hereinafter, "YASEEN"), KHALIL ABDUL-RAZAQ (hereinafter, "ABDUL-RAZAQ"), AMAR F. ABDUL-SALAM (hereinafter, "ABDUL-SALAM"), AMEER

R. MOHAMMED (hereinafter, "MOHAMMED"), SEIFEDDINE AL-KINANI (hereinafter, "AL-KINANI"), NOOR TAHSEEN AL-MAAREJ (a/k/a "Noor T. Almarej") (hereinafter, "AL-MAAREJ"), RANA J. KAABAWI (hereinafter, "KAABAWI"), and others:

    (a)    knowingly, and with intent to defraud, devised and intend to devise a material scheme and artifice to defraud various insurance companies and to obtain money and property from insurance companies by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and did knowingly cause to be delivered by mail matter by the United States Postal Service and by private and commercial interstate carrier, according to directions thereon, for the purpose of executing the scheme and artifice;

    (b)    knowingly, and with intent to defraud, devised and intend to devise a material scheme and artifice to defraud various insurance companies and to obtain money and property from insurance companies by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises, were false and fraudulent when made, and did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice.

Defendant YASIR together with Co-Defendants SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others devised and executed a scheme and artifice to defraud insurance companies and to obtain money and property from insurance companies by materially false and

fraudulent pretenses, representations, and promises. Defendant YASIR conspired with Co-Defendants SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others to commit the crimes of mail fraud and wire fraud, arising from staged accidents occurring on July 4, 2017, October 14, 2018, January 23, 2019, May 28, 2019, December 18, 2019, March 12, 2020 and April 8, 2020.[1] The fraud loss arising from these seven staged accidents is $819,885.01.

The object of the scheme and artifice to defraud was for Defendant YASIR and Co-Defendants SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others to enrich themselves by defrauding victim insurance companies through filing and collecting payment on fraudulent insurance claims for property damage, wage loss, and bodily injury. Defendant YASIR and Co-Defendants SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, AL-HIMRANI [-2], MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others caused insurance companies to pay out approximately $819,885.01 in fraudulent claims arising from the seven staged accidents. During the scheme, YASIR's girlfriend, SANCHEZ [-1], was employed as a "case manager" at a personal injury law firm and handled several of the fraudulent claims for YASIR, herself, and several of the co-Defendants.

---

[1] Defendant contends he was not involved in the October 14, 2018, and May 28, 2019, staged accidents. The combined fraud loss for those two accidents is approximately $213,770.76. The fraud loss for the other five staged accidents is $606,114.25.

Defendant YASIR and Co-Defendant SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others planned and staged automobile accidents by intentionally causing collisions between each other's automobiles or the automobile of an unindicted co-conspirator. The Defendants would deliberately drive the pre-planned "at fault" vehicle into the pre-planned "no fault" vehicle at a pre-planned location. A Defendant would then make an emergency call to 911 falsely claiming an "accident" occurred. Defendant YASIR and Co-Defendants SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others made and caused to be made false material representations to police, medical personnel, and insurance company representatives about the manner in which the staged accident occurred and the cause, nature and extent of their injuries and vehicle damage.

After a staged accident, YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others submitted and caused to be submitted fraudulent property damage, personal injury protection (medical, loss of wages) and bodily injury claims with victim insurance companies. In furtherance of the scheme, YASIR and several co-Defendants hired personal injury lawyers to represent them in connection with their false and fraudulent claims. YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others falsely claimed that they were in an accident when, in truth

and fact, they were involved in a deliberate, staged collision carried out for the sole purpose of fraudulently claiming insurance losses. YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others communicated with the victim insurance companies about the fraudulent claims via interstate telephone calls, facsimiles, emails, and mailings.

YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others sought emergency room and medical treatment for fictitious, fabricated, and exaggerated accident symptoms and injuries. YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others would then cause medical and billing records, arising from medical treatment the conspirators sought following their staged accidents, to be submitted to the victim insurance companies.

During the claim process for the staged accidents, YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others made and caused to be made various false representations to the victim insurance companies, including as to (a) the conditions that caused the crash or accident; (b) who was driving at the time of the crash; (c) the true identities of the individuals involved; (d) the income and employment status of the individuals involved; and (e) whether and to what extent they suffered injuries as a result of the staged automobile accident. YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-

1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others caused victim insurance companies to issue payments to them and their representatives via mailed check and/or electronic transfer to settle fraudulent personal injury protection (medical, loss of wages), bodily injury, and property damage claims arising from staged accidents. In furtherance of the fraud scheme for lost wage payments, YASIR and his co-conspirators falsely represented to the insurance companies that several co-conspirators worked for YASIR's company. Co-conspirators then paid YASIR a portion of the fraud proceeds arising from their fraudulent lost wage claims.

YASIR and SANCHEZ [-1], YASER [-1], YASER [-2], AL-HIMRANI [-1], BACHAY [-1], BAJAY, BACHAY [-2], BACHAY [-3], AL-DULAIMI, HADI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, MOHAMMED, AL-KINANI, AL-MAAREJ, KAABAWI, and others conspired to execute a scheme to defraud health care benefit programs and to obtain, by means of false and fraudulent pretenses and representations money and property owned by, and under the custody and control of, health care benefit programs[2] as defined in 18 U.S.C. § 24(b), in connection with the delivery of and payment for healthcare benefits, items and services.

*July 4, 2017, Staged Automobile Accident*

On July 4, 2017, YASIR, co-Defendant SANCHEZ [-1], and two unindicted co-conspirators (hereinafter, "UCC-1" and "UCC-2") staged an automobile accident in Pasco, Washington.[3] YASIR and SANCHEZ [-1] recruited UCC-1 and UCC-2 into staging the accident with them. The staged accident involved a 2014 Mercedes CLA250C, registered to SANCHEZ [-1], being purposely driven into a 2005 Chevrolet Cobalt, registered to SANCHEZ [-1]'s ex-brother-in-law, UCC-1. UCC-2,

---

[2] Farmers, Country Mutual, MAPFRE, Travelers, State Farm, Liberty Mutual, Allstate.

SANCHEZ [-1]'s sixteen-year-old daughter, was also involved in the staging. YASIR and SANCHEZ [-1] subsequently filed, and caused to be filed, fraudulent insurance claims in which they falsely represented and adopted each other's false representations that, among other things, they were involved in an accident and suffered bodily injury, wage loss, and property damage as a result of the accident. YASIR, SANCHEZ [-1], UCC-1 and others not named herein received settlement payouts of approximately $50,873.45 from State Farm.

*Wire Fraud (Counts 3, 4, 6, 7 and 9)*

On or about the date listed below, in the Eastern District of Washington and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, YASIR and co-Defendant SANCHEZ [-1] knowingly caused to be transmitted, in interstate commerce by means of wire communications certain signs, signals, and sounds, as follows:

| Approximate Date | Description of Interstate Wire |
|---|---|
| 1/31/2018[4] | Time-Limit Demand Letter regarding "Hussein A. Yasir" and Claim No. 47-0660-M04 sent by facsimile from a law firm within the State of Washington to State Farm outside the State of Washington |
| 2/14/2018[5] | Settlement Demand Letter of $67,708.19 for "Hussein Yasir" sent by facsimile from a law firm within the State of Washington to State Farm outside the State of Washington |
| 4/26/2018[6] | "Employment - Wage Loss for Hussein Yasir" documents sent by email from a law firm within the State of Washington to State Farm outside the State of Washington |

_____

[4] Count 3.

[5] Count 4.

[6] Count 6.

| 6/8/2018[7] | Letter regarding Wage Loss Calculation for "Hussein Yasir" sent by facsimile from a law firm within the State of Washington to State Farm outside the State of Washington |
| 6/19/2018[8] | Counter-Demand Letter of $22,000 for "Hussein Yasir" sent by facsimile from law a firm within the State of Washington to State Farm outside the State of Washington |

*Mail Fraud (Counts 17, 20)*

On or about the dates listed below, in the Eastern District of Washington and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, YASIR and co-Defendant SANCHEZ [-1] knowingly caused to be delivered, through the United States Mail and commercial interstate mail carrier, the mail matter described below:

| Approximate Mailing Date | Description |
| --- | --- |
| 2/26/2018[9] | State Farm check no. 576872 made payable to "Hussein Yasir & ***, His Attorney" in the amount of $25,000 mailed to an individual not named herein into the State of Washington from State Farm outside the State of Washington |
| 7/6/2018[10] | State Farm check nos. 853037 and 853032 each payable to "*** Law Group" in the amounts of $4,182.40 and $5,000 regarding Claim No 47-2967-J03 and "Insured Hussein Yasir" mailed to "*** Law Group" into the State of Washington from State Farm outside the State of Washington |

---

[7] Count 7.

[8] Count 9.

[9] Count 17.

[10] Count 20.

*October 14, 2018, Staged Automobile Accident*[11]

On October 14, 2018, BAJAY, AL-HIMRANI [-1], AL-MAAREJ, KAABAWI and BACHAY [-3] staged an accident at the intersection of Oak Street and 27th in Kennewick, Washington. The staged accident involved a 2015 Chevrolet Camaro registered to BAJAY and BACHAY [-3] and insured by BAJAY being purposely driven into the 2004 Hummer H2 registered to and insured by AL-HIMRANI [-1]. At YASIR's suggestion, BAJAY and AL-HIMRANI [-1] used YASIR's girlfriend, SANCHEZ [-1], to file fraudulent insurance claims on their behalf.[12] BAJAY, AL-MAAREJ, BACHAY [-3], KAABAWI and AL-HIMRANI [-1] filed fraudulent insurance claims in which they falsely represented and adopted each other's false representations that, among other things, they were involved in an accident and suffered bodily injury, wage loss, and property damage as a result of the accident. As a result of their knowing submission of false claims, YASIR, SANCHEZ [-1], AL-HIMRANI [-1], BAJAY, AL-MAAREJ, KAABAWI and BACHAY [-3] caused Foremost and Bristol to make payouts totaling approximately $87,924.95.[13]

*January 23, 2019, Staged Automobile Accident*

On January 4, 2019, BACHAY [-1] purchased a 2005 Toyota Sienna from a used car dealership in Oregon. On January 22, 2019, ABDUL-SALAM registered the 2005 Toyota Sienna after purchasing it from BACHAY [-1] for $2,000.00. On the same day, ABDUL-SALAM purchased personal automobile insurance, including personal injury protection, from Country Mutual for the 2005 Toyota Sienna.

---

[11] Defendant denies involvement in this staged accident.

[12] Defendant contends he did not suggest BACHAY [-1] and AL-HIMRANI [-1] use SANCHEZ [-1] and the law office to file fraudulent insurance claims. Defendant states that BACHAY [-1] asked if he could hire SANCHEZ [-1]. Defendant agreed.

[13]

On January 23, 2019, YASIR and HADI, ABDUL-SALAM, BACHAY [-1], BACHAY [-3], and YASEEN staged an accident on Court Street and Road 100 in Franklin County, Washington. The staged accident involved the 2005 Toyota Sienna driven by ABDUL-SALAM with passenger BACHAY [-3], being purposely driven into a 2006 Infinity FX35 with YASIR,[14] BACHAY [-1], HADI and YASEEN. YASIR, ABDUL-SALAM, BACHAY [-1], BACHAY [-3], HADI, and YASEEN subsequently filed fraudulent insurance claims in which they falsely represented and adopted each other's false representations that, among other things, they were involved in an accident and suffered bodily injury and wage loss as a result of the accident. On YASIR's behalf, Defendant SANCHEZ [-1] sent by facsimile materially false documents to the insurance company in furtherance of the scheme. YASIR, ABDUL-SALAM, BACHAY [-1], BACHAY [-3], HADI, and YASEEN received a settlement payout of approximately $417,014.32 from Commerce West and Country Mutual.[15]

*Mail Fraud (Counts 38, 51 and 53)*

On or about the dates listed below, in the Eastern District of Washington and elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, YASIR and co-Defendants ABDUL-SALAM, BACHAY [-1], BACHAY [3], HADI, and YASEEN knowingly caused to be delivered, through the United States Mail and commercial interstate mail carrier, the mail matter described below:

//

//

---

[14] According to Defendant, he was a passenger in the 2006 Infinity.

[15] $286,833.00 from Country Mutual-Country Financial and $130,181.32 from MAPFRE-Commerce West.

| Approximate Mailing Date | Description |
|---|---|
| 2/5/2019[16] | Country Financial check no. 9573778 payable to "Amar Abdul" in the amount of $5,949.14 mailed to "Amar Abdul" into the State of Washington from Country Financial outside the State of Washington |
| 9/10/2019[17] | Country Financial check no. 6189780 payable to "*** Law Offices & Farooq Yaseen" in the amount of $34,000.00 mailed to "*** Law Offices & Farooq Yaseen" into the State of Washington from Country Financial outside the State of Washington |
| 9/17/20[18] | Country Financial check no. 6189792 payable to "*** Law Offices in Trust for Ahmad Bachay" in the amount of $37,000.00 mailed to "*** Law Offices in Trust for Ahmad Bachay" into the State of Washington from Country Financial outside the State of Washington |

*May 28, 2019, Staged Automobile Accident[19]*

On May 28, 2019, YASER [-1], YASER [-2], KARAWI, AL-KINANI, MOHAMMED and others staged an automobile accident on County Route 12, between Johnson Road and Missimer Road, in Benton County, Washington. YASER [-1] wanted to crash his vehicle because he did no longer wanted to make monthly payments on it. YASIR[20] helped convince MOHAMMED to stage this accident. YASIR,[21] AL-

---

[16] Count 38.

[17] Count 51.

[18] Count 53.

[19] Defendant denies involvement in this staged accident.

[20] Defendant YASIR claims he was unaware of the accident and learned about it one month later, and his brother, YASER [-1], did the accident.

[21] Defendant asserts that AL-KINANI and MOHAMMED worked construction for him and were paid under the table. Defendant further asserts they asked Defendant

Plea Agreement- 17 of 36

KINANI, and MOHAMMED agreed to falsely represent that they lost wages from YASIR's company, Columbia Basin Construction and Painting, as a result of the staged accident. As part of the scheme, YASIR, MOHAMMED and AL-KINANI had an agreement whereby MOHAMMED and AL-KINANI would give YASIR a portion of the lost wage payments they received from the insurance company since they used YASIR's company in support of their false wage claims. The staged accident involved a 2009 Hyundai Sonata, driven by MOHAMMED with passenger AL-KINANI, being purposely driven into a 2014 Lexus IS driven by YASER [-1], with passengers KARAWI, YASER [-2], and two minor children not named herein. As part of the staging, no one occupied the Lexus when MOHAMMED intentionally crashed into it. YASER [-1] directed KARAWI, YASER [-2] and the two minor children to exit the vehicle before impact. AL-KINANI also was not in any vehicle when MOHAMMED deliberately crashed the Sonata into the Lexus. The 2014 Lexus IS was registered to KARAWI. At the time, the Washington State Employee's Credit Union held had a lien of approximately $30,018.78 on the 2014 Lexus IS. YASER [-1], YASER [-2], KARAWI, AL-KINANI, MOHAMMED, subsequently filed fraudulent insurance claims in which they falsely represented and adopted each other's false representations that, among other things, they were involved in an accident and suffered bodily injury and wage loss as a result of the accident. YASER [-1], YASER [-2], KARAWI, AL-KINANI and MOHAMMED received a settlement payout of approximately $125,845.81 from State Farm and Travelers Insurance.

*December 18, 2019, Staged Automobile Accident*

On December 18, 2019, YASIR, YASEEN and AL-DULAIMI staged an accident at the intersection of 7th Avenue and Morain Street in Kennewick, Washington. The staged accident involved AL-DULAIMI purposely driving a 2017

---

for employment letters, which he provided. Defendant asserts he was paid $300 of the $700 they were getting to involve just one insurance claim payout.

Chevrolet Impala registered to AL-DULAIMI into a 2017 Dodge Charger registered to YASEEN. YASIR, YASEEN and AL-DULAIMI subsequently filed, and caused to be filed, fraudulent insurance claims in which they falsely represented and adopted each other's false representations that, among other things, they were involved in an accident and suffered bodily injury, wage loss, and property damage as a result of the accident. YASIR, YASEEN and AL-DULAIMI received settlement payouts totaling approximately $61,512.62 from State Farm and $39,094.85 from Liberty Mutual/Safeco.

### March 12, 2020, Staged Automobile Accident

On March 12, 2020, YASIR and YASEEN intentionally damaged YASIR's 2002 Dodge Ram 1500 Truck. YASIR filed a fraudulent insurance claim. As a result, Progressive Insurance Company paid YASIR $4,683.72.

### April 8, 2020, Staged Automobile Accident

On April 8, 2020, YASIR together with co-Defendants AL-DULAIMI, SANCHEZ [-1], AL-KINANI, MOHAMMED, YASEEN, ABDUL-RAZAQ, UCC-4 and others staged an accident at the intersection of West 19th Avenue and South Olympia Street in Kennewick, Washington. As part of the scheme, using a false name to conceal his identity, YASIR communicated with the insurance company in connection the fraudulent claims. It was YASIR's idea to falsely report they were employed at ABDUL-RAZAQ's company in support of their lost wage claims.[22] The staged accident involved MOHAMMED intentionally driving a 2008 Chevrolet Malibu, registered to UCC-4, into a 2012 Chevrolet Malibu. As part of the staging, ABDUL-RAZAQ intentionally damaged the rear windshield of the 2012 Chevrolet Malibu by using a hard object. After the initial impact, MOHAMMED reversed the

---

[22] Defendant asserts that it was AL-KINANI's idea to report they were employed at ABDUL-RAZAQ's company. Defendant asserts they wanted $4,000 to pay the driver and Defendant gave it to them.

2008 Chevrolet Malibu and intentionally rammed it approximately two more times into the 2012 Chevrolet Malibu to cause further damage. UCC-4 called the police and falsely reported an "accident" occurred and that UCC-4 was the driver of the 2008 Chevrolet Malibu when it struck the 2012 Chevrolet Malibu. AL-KINANI falsely reported to the police that he had been the driver of the 2012 Chevrolet Malibu. YASIR, AL-DULAIMI, SANCHEZ [-1], AL-KINANI, MOHAMMED, YASEEN, ABDUL-RAZAQ, and UCC-4 subsequently filed fraudulent insurance claims in which they falsely represented that, among other things, they were involved in an accident and suffered bodily injury, wage loss, and property damage as a result of the accident. After the staged accident, Defendant AL-DULAIMI together with Co-Defendants YASIR, SANCHEZ [-1], AL-KINANI, MOHAMMED, YASEEN, ABDUL-RAZAQ, UCC-4 sent documents to the insurance company knowing they were false. Defendant AL-DULAIMI together with Co-Defendants YASIR, SANCHEZ [-1], AL-KINANI, MOHAMMED, YASEEN, ABDUL-RAZAQ, UCC-4 and others caused payouts totaling approximately $18,758.64 from Allstate and $14,176.65 from Farmers.[23]

7. The United States Agrees:

(a) To Dismiss Counts:

At the time of sentencing, the United States agrees to move to dismiss as to Defendant Counts 1, 2, 5, 8, 10, 11, 12, 13, 54, 55, 56, and 57 which charge Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343, and as to Defendant Counts 14, 15, 16, 18, 19, and 39 through 50 and 52 which charge Defendant with Mail Fraud, in violation of 18 U.S.C. § 1341, and as to Defendant Count 128 which charges Defendant with Conspiracy to Obstruct Official Proceeding, in violation of 18 U.S.C. § 1512(k).

(b) Not to File Additional Charges:

---

[23] Combined total payout for the staged accident was $32,935.29.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement any time before sentencing.

8.  United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing.

(a)  Base Offense Level:

Regarding the mail/wire fraud and conspiracy to commit mail/wire fraud offenses, the parties agree and stipulate that Defendant's Base Offense Level is 7. *See* USSG § 2B1.1(a)(1). Regarding the healthcare fraud conspiracy offense, the parties agree and stipulate that Defendant's Base Offense Level is 6. *See* USSG § 2B1.1(a)(2).

(b)  Specific Offense Characteristics:

Defendant acknowledges the United States will recommend that Defendant's Base Offense Level be increased 14-levels[24] for a loss greater than $550,000 but less than $1,500,000 attributable to Defendant YASIR (arising from seven staged accidents). Defendant reserves the right to object. Defendant will recommend that Defendant's Base Offense Level be increased 12-levels for a loss greater than $250,000 but less than $550,000[25] attributable to Defendant YASIR (arising from five staged accidents). Defendant acknowledges the United States will recommend that Defendant's base offense level be increased 2-levels because the offense involved

---

[24] USSG §2B1.1(b)(1)(H).

[25] USSG §2B1.1(b)(1)(G).

Plea Agreement- 21 of 36

sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means.[26] Defendant reserves the right to object.

The parties have no agreement whether any other specific offense characteristics are applicable. The United States and Defendant may argue for or against any adjustments and/or enhancements under the USSG noted in the Presentence Investigation Report.

(c) <u>Aggravating Role:</u>

Defendant acknowledges the United States will recommend that his offense level should be increased 2-levels because the Defendant was an organizer, leader, manager, or supervisor of criminal activity. USSG §3B1.1(c). Defendant reserves the right to object.

(d) <u>Using a Minor to Commit a Crime:</u>

Defendant acknowledges the United States will recommend that Defendant's offense level be increased 2-levels because Defendant used a person less than eighteen years of age to commit the offense or assist in avoiding detection of the offense. USSG §3B1.4. Defendant reserves the right to object.[27]

(e) <u>Obstructing/Impeding the Administration of Justice:</u>

Defendant acknowledges the United States will recommend that Defendant's offense level be increased 2-levels because the Defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the wire/mail/ healthcare fraud conspiracy offenses of conviction, and the obstructive conduct related to the defendant's offenses of conviction and any relevant conduct. USSG §3C1.1. Defendant reserves the right to object.

---

[26] USSG §2B1.1(b)(10)(C).

[27] Defendant claims SANCHEZ [-1] brought her daughter and placed her in the vehicle. He claims he had nothing to do with the daughter.

(f)     Multiple Count Analysis:

The parties agree that Counts 3, 4, 6, 7, 9, 17, 20, 38, 51, 53, 126 and 127 should be grouped together.  USSG §3D1.2(c).

(f)     Acceptance of Responsibility:

The United States will recommend that Defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), if Defendant does the following:

i.      accepts this Plea Agreement;

ii.     enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

iv.     provides complete and accurate information during the sentencing process; and

v.      does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

(g)     Criminal History:

The parties make no agreement on Defendant's criminal history category, which shall be determined by the Court after the Presentence Investigative Report is completed.

9.   Departure:

The Defendant is free to move for a departure and/or variance under 18 U.S.C. § 3553.  The United States intends to seek a guidelines sentence.

10. Incarceration:

Pursuant to Rule 11(c)(1)(C), the Defendant and the United States agree that a range of imprisonment of 21 to 68 months imprisonment is an appropriate disposition of this case. Pursuant to Rule 11(c)(1)(C), the United States will be recommending that the Court impose a sentence of 68 months imprisonment and the Defendant will be recommending that the Court impose a sentence of 21 months imprisonment.

If the Court rejects this Plea Agreement pursuant to Fed.R.Crim.P. 11(c)(5), the Defendant and the United States agree that they each may withdraw from this Plea Agreement. If the Defendant withdraws from this Plea Agreement, the Defendant may withdraw his pleas of guilty. If the United States withdraws from this Plea Agreement, the United States may prosecute the Defendant for any and all criminal conduct involving or relating to the underlying facts and circumstances of this case.

11. Criminal Fine:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

12. Restitution:

The parties agree restitution is required pursuant to 18 U.S.C. §§ 3663(a), 3663A, and 3664. Further, pursuant to 18 U.S.C. § 3663(a)(3), the Defendant voluntarily agrees to pay the agreed upon restitution amount in exchange for the United States not bringing additional potential charges, regardless of whether counts of the Indictment dealing with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the parties agree to the following:

(a) Restitution Amount and Interest:

The parties agree that the Court should order Defendant to pay restitution in the amount of $606,114.25. The parties agree that this amount shall be ordered joint and several with Co-Defendants SANCHEZ [-1], BACHAY [-1], BACHAY [-3], HADI, AL-DULAIMI, YASEEN, ABDUL-RAZAQ, ABDUL-SALAM, AL-KINANI, and MOHAMMED. The parties agree that this amount reflects the total joint and several

restitution amount owed by the co-defendants for five staged accidents (July 4, 2017, January 23, 2019, December 18, 2019, March 12, 2020 and April 8, 2020) Defendant was involved in. *See* 18 U.S.C. § 3664(h). The parties agree that Defendant's payment of $606,114.25 will fully satisfy his restitution obligation. The interest on this restitution amount should be waived.

      (b)   <u>Payments:</u>

The Court should order Defendant to pay $606,114.25 in restitution. The parties agree the Court will set a payment schedule based on his financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said, Defendant agrees to pay not less than 10% of his net monthly income towards his restitution obligation.

      (c)   <u>Treasury Offset Program and Collection:</u>

Defendant understands the Treasury Offset Program collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until a fine or restitution order is paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of

perjury and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement. Until such time as the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

Defendant understands and agrees that pursuant to 18 U.S.C. §3614, Defendant may be resentenced to any sentence which might have originally been imposed if the court determines that Defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide efforts to pay a fine or restitution.

(d)    Notifications:

Defendant agrees to notify the Court and the United States of any material change in his economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect his ability to pay restitution. *See* 18 U.S.C. § 3664(k). Further, Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. This obligation ceases when the restitution is paid-in-full.

Defendant agrees to notify the United States of any address change within 30 days of that change. *See* 18 U.S.C. §3612(b)(F). This obligation ceases when the restitution is paid-in-full.

13. Forfeiture:

The parties agree forfeiture applies. *See* 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(7); 28 U.S.C. § 2461(c). With respect to forfeiture, the parties agree to the following:

(a)   Forfeitable Property:

Defendant, HUSSEIN A. YASIR a/k/a "Abu Fakhri" (hereafter "Defendant") stipulates and agrees to forfeit all right, title, and interest, to the United States, in all property, real or personal, which constitutes or is derived from proceeds traceable to offenses in violation of 18 U.S.C. §§ 1343, 1347 and 1349, and any property traceable to such property, including, but not limited to, the following listed assets:

- $20,107.00 U.S. currency seized by the Federal Bureau of Investigation pursuant to the execution of a federal search and seizure warrant on or about May 28, 2020. *The parties agree that the confeited funds will be credited to his money judgment once a final*

The above-listed currency is the subject of a related civil forfeiture action filed *order of confeiture is received.* in the United States District Court for the Eastern District of Washington, entitled *United States v. $40,677.00 U.S. Currency.*, Civil Case No. 4:20-CV-5217-TOR. Defendant stipulates and agrees that the above-listed currency is directly forfeitable property and is civilly forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds obtained from violation(s) of 18 U.S.C. §§ 1343, and/or 1347; and/or for any other legal basis supporting civil forfeiture. *HY*

Defendant stipulates and agrees to the entry of an order of forfeiture in civil case 4:20-CV-5217-TOR. forfeiting the currency to the United States and waives further notice of the civil forfeiture proceedings pending against the currency. Defendant stipulates and agrees to testify truthfully in any forfeiture proceeding, including the above referenced civil forfeiture action. Defendant stipulates and agrees to execute any and all forms and pleadings necessary to effectuate such forfeiture. Defendant stipulates and agrees to comply with all requests made by the United States that are made in order to pass clear title of the currency to the United States.

The United States shall seek a forfeiture money judgment in this matter and will not seek to forfeit specific property, except as set forth in this Plea Agreement or authorized by law. The United States will not seek to forfeit proceeds in an amount

exceeding what Defendant actually obtained as a result of the crime. *See Honeycutt v. U.S.*, 137 S. Ct. 1626 (2017).

      (b)   Money Judgment

Defendant agrees to forfeit to the United States all right, title, and interest in the following property: a $83,335.42 money judgment, which represents the amount of proceeds Defendant obtained as a result of his illegal conduct.

      (c)   Substitute Property

Defendant understands the United States may seek for Defendant to forfeit substitute property in satisfaction of the money judgment if the United States can establish the following regarding the above-described property (*i.e.*, the money judgment): a) it cannot be located upon the exercise of due diligence; b) it has been transferred or sold to, or deposited with, a third party; c) it has been placed beyond the Court's jurisdiction; d) it has substantially diminished in value; e) it has been commingled with other property and cannot be divided without difficulty. *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(p). The United States will not seek to forfeit substitute property from other defendants or co-conspirators; it may only forfeit substitute property from Defendant. *See* 21 U.S.C. § 853(p).

      (d)   Application of Forfeited Property to Restitution

Defendant understands the United States will seek restitution for the victim(s) in this case independent of this money judgment. It is the parties' mutual understanding that the United States Attorney's Office will seek approval to apply the proceeds of any forfeited assets to Defendant's restitution obligations. Defendant recognizes the final decision to approve this application rests with the Attorney General. *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. 9 *et. seq.*

      (e)   Cooperation on Forfeited Assets:

Defendant agrees to cooperate with the United States in passing clear title on all forfeited assets and to execute any and all forms and pleadings necessary to effectuate such forfeiture of assets. Defendant also agrees to assist the United States in locating

any assets that 1) are the proceeds of illegal conduct (as outlined in this Plea Agreement) and 2) have not been dissipated. If such assets are located, then Defendant will stipulate to their forfeiture.

    (f)   <u>Waivers:</u>

Defendant agrees to waive oral pronouncement of forfeiture at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B).

Defendant stipulates and agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with the Plea Agreement on any grounds, including a claim that forfeiture in this case constitutes an excessive fine or punishment.

Defendant stipulates and agrees to hold the United States, and its agents and employees, harmless from any and all claims whatsoever in connection with the investigation, the prosecution of charges, and the seizure and forfeiture of property covered by this Plea Agreement.

    (g)   <u>Non-Abatement of Criminal Forfeiture:</u>

Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive her, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

14.   <u>Supervised Release:</u>

The parties agree to recommend that the Court impose a 3-year term of supervised release. The parties are free to advocate for any special conditions they believe are appropriate.

//

//

15. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $1,200 ($100 per count) mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington. *See* 18 U.S.C. § 3013.

16. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, then Defendant agrees to earn the money to pay toward these obligations by participating in Bureau of Prisons' Inmate Financial Responsibility Program.

17. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

  a.  pleading guilty in this case may have immigration consequences;

  b.  a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

  c.  removal from the United States and other immigration consequences are the subject of separate proceedings; and

  d.  no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

18. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted

of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

19. <u>Waiver of Appeal Rights:</u>

In return for the concessions that the United States has made in this Plea Agreement, Defendant agrees to waive Defendant's right to appeal Defendant's conviction and sentence if the Court imposes a term of imprisonment consistent with the terms of this Rule 11(c)(1)(C) Plea Agreement. Defendant further expressly waives his right to file any post-conviction motion attacking his convictions and sentences, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by the Defendant and which, in the exercise of due diligence, could not be known by the Defendant by the time the Court imposes the sentence.

If the Court indicates its intent to impose a sentence above the Rule 11(c)(1)(C) terms of this Agreement and Defendant chooses *not* to withdraw, then Defendant: (a) may appeal only Defendant's sentence, but not Defendant's conviction; (b) may appeal Defendant's sentence only if it exceeds the high end of the Guidelines range determined by the Court; and (c) may appeal only the substantive reasonableness of Defendant's sentence.

20. <u>Compassionate Release:</u>

In consideration for the benefits Defendant is receiving under the terms of this Plea Agreement, Defendant expressly waives Defendant's right to bring any motion for Compassionate Release other than a motion arising from one of the specific bases set forth in this paragraph of this Plea Agreement. The United States retains the right to oppose, on any basis, any motion Defendant files for Compassionate Release.

The only bases on which Defendant may file a motion for Compassionate Release in the Eastern District of Washington are the following:

//

//

a. Medical Condition of Defendant

    i. Defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia; or

    ii. Defendant is suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which Defendant is not expected to recover.

b. Age of Defendant

    i. Defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process; and has served at least 10 years or 75 percent of Defendant's term of imprisonment, whichever is less; or

    ii. Defendant is at least 70 years old and has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which Defendant is imprisoned.

c. Family Circumstances

    i. The caregiver of Defendant's minor child or children has died or become incapacitated, and Defendant is the only

available caregiver for Defendant's minor child or children; or

    ii.    Defendant's spouse or registered partner has become incapacitated, and Defendant is the only available caregiver for Defendant's spouse or registered partner.

    d.    <u>Subsequent Reduction to Mandatory Sentence</u>

        i.    Defendant pleaded guilty to an offense which, on the date of Defendant's guilty plea, carried a mandatory minimum sentence; and

        ii.    after the entry of judgment, the length of the mandatory minimum sentence for Defendant's offense of conviction was reduced by a change in the law; and

        iii.    the application of the reduced mandatory minimum sentence would result in Defendant receiving a lower overall sentence.

    e.    <u>Ineffective Assistance of Counsel</u>

        i.    Defendant seeks Compassionate Release based on a claim of ineffective assistance of counsel arising from information that Defendant both

            1.    did not know at the time of Defendant's guilty plea, and

could not have known, in the exercise of due diligence, at the time the Court imposed sentence.

    21.    <u>Withdrawal or Vacatur of Defendant's Plea:</u>

    Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

b.    the United States may prosecute Defendant on all available charges;

c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

22. Integration Clause:

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities. The parties agree that this agreement cannot be modified except in writing that is signed by the United States and Defendant.

## Approval and Signature

Agreed and submitted on behalf of the United States Attorney's Office for the

Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

George J.C. Jacobs III
Assistant United States Attorney

4/5/23
Date

    I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney. I understand and voluntarily enter into the Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

HUSSEIN A. YASIR
Defendant

04/5/23
Date

    I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's pleas of guilty.

Michael W. Lynch
Attorney for Defendant

4/5/23
Date

I hereby certify that I have read and translated the entire foregoing document to the Defendant in a language with which he is conversant. If questions have arisen, I have notified the Defendant's counsel of the questions and have not offered nor given legal advice nor personal opinions.

Ghada Attich

4/3/2023

Interpreter                    Date